## PULLMAN *v.* UPTON.

Assumpsit by an assignee in bankruptcy of an insurance company against the holder of shares of its stock, to enforce the collection of the balance due thereon, the same not having been paid pursuant to the order of the court sitting in bankruptcy. Plea, *non assumpsit*. *Held*, 1. That the plea admits the existence of the corporation, and that the State alone can raise the question whether the corporate stock had been properly increased. 2. That the transferee of stock, who caused the transfer to be made to himself on the books of the corporation, although he holds it as collateral security for a debt of his transferrer, is liable for such balance to such assignee.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was assumpsit by Clark W. Upton, assignee in bankruptcy of the Great Western Insurance Company, against Albert B. Pullman, a stockholder in said company, to recover the balance remaining unpaid upon his stock.

The capital stock of the company was originally $100,000, and it was, Aug. 22, 1870, by the alleged consent and action of the stockholders, increased to $5,000,000. The company sustained heavy losses by the fire at Chicago, on the 8th and 9th of October, 1871; and it was duly adjudicated a bankrupt Feb. 6, 1872, and Upton was appointed its assignee. The court in which the proceedings in bankruptcy were pending, ordered, July 7, 1872, that the entire amount unpaid on the capital stock of the company be paid to the assignee, on or before the 15th of August then next ensuing; and that, in default of payment, the assignee proceed to collect the same. Conformably to the directions of the court, notice of this order was given to the stockholders.

One Myers owned twenty-five shares of the stock, of $100 each, whereon twenty per cent had been paid; and, being indebted to Pullman, assigned them to him, in the summer of 1871, as collateral security. Pullman, on the 7th of the following October, caused them to be transferred to him on the books of the company; and he then surrendered the old certificate, and took a new one for the same number of shares.

On the trial, Upton offered, and the court admitted in evidence, certain papers; to the admission of which Pullman objected, on

the ground that each of them was immaterial.   The court having admitted said order directing the payment of the balance
due upon the stock, Pullman offered to prove that a less assessment would have sufficed to cover the losses of the company.
To the rejection of said offer, and to the overruling his objection to each paper so admitted, he in due time excepted.   Judgment having been rendered against him by the District Court,
which was affirmed in the Circuit Court, he sued out this writ,
and assigns for error the rulings of the District Court, upon his
objection to the offered evidence, as follows : —

- The District Court erred in admitting in evidence (1) the
pamphlet copy of the charter of said company ;  (2) the certified
copy of the proceedings for increase of the capital stock of said
company ;  (3) the certified copy of the amended charter of said
company, and the certified copy of the report of said company,
dated December, 1870, and the license of said company to do
business, and the auditor's report of the examination of the
affairs of said company ;  (4) the order of said District Court,
in bankruptcy, making an assessment on the stock of said company ;  (5) the notice to Pullman of said assessment.

*Mr. H. S. Monroe* for the plaintiff in error.
*Mr. L. H. Boutell, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The evidence to which the defendant below objected, and to
the admission of which he took exception, was quite unimportant.   Its object was to prove the existence of the corporation
and the increase of the corporate stock.   But the existence of
the corporation was admitted by the defendant's plea of *non
assumpsit ;* and whether the corporate stock had been properly
increased was a question the State only could raise.   It is well
settled, that, in a suit by a corporation, a plea of the general
issue admits the competency of the plaintiff to sue as such.   *The
Society for the Propagation of the Gospel, &c.* v. *The Town of
Pawlet,* 4 Pet. 480.   The first three assignments of error may,
therefore, be dismissed without further consideration.

That the fourth and fifth assignments are without merit
plainly appears in the report of *Sanger* v. *Upton* (91 U. S. 56),
where a similar order and notice to the stockholders was held

not merely sufficient, but conclusive as to the right of the assignee to bring suit to enforce the payment of unpaid balances due for the corporate stock.

The only question remaining is, whether an assignee of corporate stock, who has caused it to be transferred to himself on the books of the company, and holds it as collateral security for a debt due from his assignor, is liable for unpaid balances thereon to the company, or to the creditors of the company, after it has become bankrupt.

That the original holders and the transferees of the stock are thus liable we held in *Upton* v. *Trebilcock* (91 id. 45), *Sanger* v. *Upton* (id. 56), and *Webster* v. *Upton* (id. 65) ; and the reasons that controlled our judgment in those cases are of equal force in the present. The creditors of the bankrupt company are entitled to the whole capital of the bankrupt, as a fund for the payment of the debts due them. This they cannot have, if the transferee of the shares is not responsible for whatever remains unpaid upon his shares; for by the transfer on the books of the corporation the former owner is discharged. It makes no difference that the legal owner — that is, the one in whose name the stock stands on the books of the corporation — is in fact only, as between himself and his debtor, a holder for security of the debt, or even that he has no beneficial interest therein. This was ruled in *The Newry, &c. Railway Co.* v. *Moss*, 14 Beav. 64. In that case, it was said that only those persons who appear to be shareholders on the register of the company are liable to pay calls. In *Re Phœnix Life Insurance Co., Hoare's Case* (2 John. & H. 229), it appeared that certain shares had been settled upon Hoare and others, as trustees in a marriage settlement. The trustees had no beneficial interest, but they were registered as shareholders, and the word " trustees " added in the margin of the register, and they receipted for dividends as trustees. It was held by Vice-Chancellor Wood that they were liable as contributories to the full extent, and not merely to the extent of the trust estate. It was said, " A person who is a shareholder is absolutely liable, although he may be bound to apply the proceeds of the shares upon a trust." In *The Empire City Bank* (8 Abb. (N. Y.) Pr. 192, reported also in 18 N. Y. 200), the Court of Appeals held persons responsible as

stockholders in respect to the stock standing in their names on the books of the bank, though they held the stock only by way of hypothecation as collateral security for money loaned, and they were held liable for an amount equal to their stock for the unsatisfied debts of the bank. In *Adderly* v. *Storm* (6 Hill (N. Y.), 624), it appeared that one Bush, in 1837, being indebted to the defendants, transferred to them, on the books of a company, certain shares of stock, and delivered to them the usual certificates. On receiving the certificates, the defendants gave Bush a receipt, stating they had received the stock, which they were to dispose of at any time for $200 per share, applying the proceeds to the payment of the notes which Bush owed them, or, if not sold when the notes should be paid, to return the scrip to Bush, or account for it. The last of the notes was paid in September, 1838, and the defendants returned the scrip to Bush, giving also a power of attorney for the transfer of the stock. The retransfer was not made, however, until March 2, 1840, and the defendants were held liable, as stockholders, for a debt of the company contracted in January, 1840; and this, it was said, would be the law, though the plaintiff may not have known, at the time he trusted the company, that the defendants could be reached. So, in *Holyoke Bank* v. *Burnham* (11 Cush. (Mass.) 183), it was decided that a transfer of stock on the books of the bank, intended merely to be held as collateral security, makes the holder liable for the bank debts. It was said, the creditor is to be considered the absolute owner, and that his arrangement with his debtor cannot change the character of the ownership. And in *Wheelock* v. *Kost et al.* (77 Ill. 296) the doctrine was asserted, that when shares of stock in a banking corporation have been hypothecated, and placed in the hands of the transferee, he will be subjected to all the liabilities of ordinary owners, for the reason that the property is in his name, and the legal ownership appears to be in him.

These decisions are sufficient to vindicate the judgment of the court below. The case of the plaintiff in error is a hard one, but he cannot be relieved consistently with due observance of well-established law.

*Judgment affirmed.*